UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PEPSICO, INC.,<br><br>Plaintiff,<br><br>-against-<br><br>ACE AMERICAN INSURANCE COMPANY, ACE PROPERTY AND CASUALTY INSURANCE COMPANY, WESTCHESTER SURPLUS LINES INSURANCE COMPANY, AND VIGILANT INSURANCE COMPANY,<br><br>Defendants. | **DEFENDANTS' ANSWER AND DEFENSES TO COMPLAINT**<br><br>Case No. 26 Civ. 9727 (JGK) |

Defendants ACE American Insurance Company ("ACE American"), ACE Property and Casualty Insurance Company ("ACE P&C"), Westchester Surplus Lines Insurance Company ("Westchester"), and Vigilant Insurance Company ("Vigilant") (collectively, "Defendants"), by and through their undersigned counsel, hereby answer the Complaint, dated October 23, 2026, filed by Plaintiff PepsiCo, Inc. ("PepsiCo" or "Plaintiff").

To the extent that the Complaint purports to quote from, cite, or summarize allegations from third-party documents, no response herein should be read as admitting any allegation by any third party unless expressly admitted herein. If an averment is not specifically admitted, it is hereby denied. To the extent any allegation in Plaintiff's Complaint states a legal conclusion, no response is required, and Defendants do not admit any legal conclusion stated by Plaintiffs. To the extent that the headings in Plaintiff's Complaint are characterized as substantive allegations, they are hereby denied. Defendants expressly reserve the right to amend and/or supplement this Answer, including but not limited to the answers and defenses set forth herein, as may be

necessary. Defendants answer Plaintiff's Complaint by admitting, denying, and alleging as follows:

## NATURE OF THE ACTION

**1. PepsiCo is a food and beverage company headquartered in Purchase, New York. PepsiCo bought liability insurance to protect itself against lawsuits, including one or more liability policies from each of the Insurers (collectively, the "Policies"). For decades, PepsiCo has paid the premiums the Insurers charged.**

**ANSWER**: Upon information and belief, Defendants admit that PepsiCo is headquartered in New York. Defendants admit that PepsiCo has purchased insurance policies from Defendants (the "Policies") and that PepsiCo paid premiums for the Policies. To the extent that Paragraph 1 characterizes the reasons for which PepsiCo purchased the insurance Policies, Defendants lack information or knowledge sufficient to determine the truth of the allegations. Defendants refer to the Policies for their full contents and context.

**2. Although these Policies are subject to different attachment points, deductibles, and coverage limits, they all have substantively similar terms and conditions to the extent relevant to this dispute. Each Insurer promised that, in exchange for a substantial annual premium, it would undertake certain defense duties in connection with any lawsuits that were filed against PepsiCo seeking damages "because of" bodily injury, sickness, or disease (among other things) within the specified limits of each relevant Policy.**

**ANSWER**: The allegations in Paragraph 2 contain legal conclusions to which no response is required. To the extent a response is required, Defendants deny that PepsiCo has accurately and completely characterized the Policies and refer to the Policies for their full contents and context.

**3. PepsiCo complied with all its obligations under the Policies, and the Insurers accepted its premiums year after year for the promised protection. But the Insurers have nonetheless failed to meet their Policy obligations in connection with a lawsuit filed against PepsiCo in the Superior Court of the State of California, County of San Francisco, styled *The People of the State of California, acting by and through San Francisco City Attorney David Chiu v. The Kraft Heinz Company, et al.*, Case No. CGC-25-631189 (the "Underlying Action"). A copy of the complaint in the Underlying Action (the "Underlying Complaint") is attached as Exhibit A.**

**ANSWER**: The allegations in Paragraph 3 contain legal conclusions to which no response is required. To the extent a response is required, Defendants admit that PepsiCo has been named as a defendant in the Underlying Action and that PepsiCo attached an exhibit to its Complaint which purports to be a copy of the complaint in the Underlying Action (the "Underlying Complaint"). *See* ECF No. 1-1. Defendants also admit that PepsiCo paid premiums for the Policies. Paragraph 3 is otherwise denied.

**4. The Underlying Action asserts claims against PepsiCo and other defendants alleging that residents of the City and County of San Francisco (the "City") consumed unidentified products, sold by PepsiCo and other defendants, that the City calls "ultra-processed foods" or "UPF," and that those products allegedly caused individual residents to develop diabetes, heart disease and other "preventable diseases." (Ex. A ¶¶ 12, 220). Although the City styles its claims as unfair competition and public nuisance, the Underlying Action is, at bottom, an action because of bodily injury allegedly caused by a product. The City itself alleges that "[t]his case is about food products whose ingredients and manufacturing processes interrupt our bodies' abilities to function." (Ex. A ¶ 10). The City does not allege injury to any public space or shared resource. Instead, it aggregates the alleged individual bodily injuries and diseases of its residents, which it describes as "increased rates of chronic disease and death." (*Id.* ¶ 251). Among other relief, the City seeks to recover from PepsiCo monetary costs, including "more robust healthcare and associated costs," to address those alleged bodily injuries and diseases. (*Id.* ¶ 256).**

**ANSWER**: The allegations in Paragraph 4 purport to characterize the allegations in the Underlying Action. To the extent a response is required, Defendants admit that the Underlying Action asserts claims against PepsiCo and other defendants for violation of California's Unfair Competition Law and for public nuisance. Defendants deny that PepsiCo has accurately and completely characterized the Underlying Complaint and refer to the Underlying Complaint for its full contents and context.

**5. There is coverage for these costs under the plain language of the Policies, many of which expressly state, "Damages because of 'bodily injury' include damages claimed by any person or organization for care… resulting at any time from the 'bodily injury.'" The allegations in the Underlying Action therefore trigger the Insurers' defense obligations under the Policies.**

**ANSWER**: The allegations in Paragraph 5 contain legal conclusions to which no response is required. To the extent a response is required, Defendants admit that certain of the Policies state that "Damages because of 'bodily injury' include damages claimed by any person or organization for care, loss of services or death resulting at any time from the 'bodily injury.'" Defendants deny that Pepsi has accurately and completely characterized the Policies and refer to the Policies for their full contents and context. Defendants otherwise deny Paragraph 5.

**6. PepsiCo promptly gave the Insurers notice of the Underlying Action and asked that they fulfill the coverage and defense obligations they have breached under the Policies. The Insurers refused.**

**ANSWER**: To the extent Paragraph 6 calls for a legal conclusion, no response is required. To the extent a response is required, Defendants admit that PepsiCo provided notice of the Underlying Action to Defendants. Defendants further admit that, by letter dated May 1, 2026 (the "Coverage Letter"), Defendants sent PepsiCo a letter detailing their respective coverage positions for the Underlying Action. Defendants refer to the May 1, 2026 letter for its full contents and context.

**7. PepsiCo accordingly files this lawsuit seeking to hold the Insurers to their Policy commitments. This Complaint seeks (i) a declaration of the parties' respective rights and obligations under the Policies, including a declaration that the Insurers are obligated to meet their defense obligations to PepsiCo in the Underlying Action, and (ii) damages for the Insurers' breach of contract arising from their refusal to honor those Policies.**

**ANSWER**: The allegations in Paragraph 7 characterize PepsiCo's own complaint against Defendants. Defendants deny that PepsiCo is entitled to any relief against them.

## PARTIES

**8. Plaintiff PepsiCo is a corporation incorporated under the laws of North Carolina with its principal place of business in Purchase, New York.**

**ANSWER**: Upon information and belief, Defendants admit the allegations in Paragraph 8.

**9. Defendant ACE American is, upon information and belief, a corporation organized under the laws of Pennsylvania with its principal place of business in Pennsylvania that is authorized to transact insurance business in the State of New York.**

**ANSWER**: Defendants admit the allegations in Paragraph 9.

**10. Defendant ACE P&C is, upon information and belief, a corporation organized under the laws of Pennsylvania with its principal place of business in Pennsylvania that is authorized to transact insurance business in the State of New York.**

**ANSWER**: Defendants admit the allegations in Paragraph 10.

**11. Defendant Westchester is, upon information and belief, a corporation organized under the laws of Georgia with its principal place of business in Pennsylvania. It is, upon information and belief, authorized to transact insurance business in the State of New York.**

**ANSWER**: Defendants admit the allegations in Paragraph 11.

**12. Defendant Vigilant is, upon information and belief, a corporation organized under the laws of New York with its principal place of business in New York County, New York, where it is authorized to transact insurance business.**

**ANSWER**: Defendants deny that Vigilant's principal place of business is in New York County, New York. Defendants otherwise admit the allegations in Paragraph 12.

## VENUE AND JURISDICTION

**13. This Court has subject-matter jurisdiction over this action under Article VI, Section 7 of the New York State Constitution and Judiciary Law § 140-b, because the Supreme Court of the State of New York is a court of general original jurisdiction in law and equity.**

**ANSWER**: Paragraph 13 contains legal conclusions to which no response is required.

**14. This Court has jurisdiction to grant declaratory relief under New York Civil Practice Law and Rules ("CPLR") § 3001 because PepsiCo seeks a declaration of the parties' rights and legal obligations under one or more insurance Policies, including a declaration that the Insurers must meet the defense duties imposed by the Policies in connection with the Underlying Action.**

**ANSWER**: Paragraph 14 contains legal conclusions to which no response is required. To the extent a response is required, Defendants admit that PepsiCo purports to seek declaratory relief

pursuant to New York C.P.L.R. § 3001, but deny that PepsiCo is entitled to any relief. Defendants otherwise deny the allegations in Paragraph 14.

**15. This Court also has jurisdiction over PepsiCo's claim for breach of contract arising from the Insurers' denial of coverage and refusal to meet their defense obligations to PepsiCo under the applicable Policies.**

**ANSWER**: Paragraph 15 contains legal conclusions to which no response is required. To the extent a response is required, Defendants deny that they breached any obligation to PepsiCo in connection with the Underlying Action.

**16. This Court has personal jurisdiction over each of the Insurers. Vigilant is subject to general jurisdiction because it is organized under New York law and maintains its principal place of business in New York. Each of the Insurers, including Vigilant, is also subject to specific jurisdiction because each issued one or more of the Policies to PepsiCo, a New York-headquartered insured, and accepted PepsiCo's premiums over many years. Each also denied coverage in correspondence sent to PepsiCo in Purchase, New York. PepsiCo's claims arise from those transactions.**

**ANSWER**: Paragraph 16 contains legal conclusions to which no response is required. Defendants admit that Vigilant is incorporated in New York, but deny that Vigilant maintains its principal place of business in New York. Defendants admit that each Defendant issued one or more insurance policies to PepsiCo, which, upon information and belief, is headquartered in New York, that PepsiCo paid premiums for the Policies, and that the May 1, 2026 Coverage Letter was addressed to PepsiCo in Purchase, New York. Defendants admit that the Coverage Letter detailed Defendants' respective coverage positions for the Underlying Action but refer to the Coverage Letter for its full contents and context. Defendants otherwise deny the allegations in Paragraph 16.

**17. Venue is proper in New York County, New York under CPLR § 503(a) and CPLR § 503(c) because Defendant Vigilant, a New York entity with its principal place of business in New York County, resides in New York County for venue purposes.**

**ANSWER**: Paragraph 17 contains legal conclusions to which no response is required. To the extent a response is required, Defendants deny that Vigilant's principal place of business is in New York County.

## FACTUAL BACKGROUND

### A. The Underlying Action

**18. On or about December 2, 2025, PepsiCo was named as a defendant in the Underlying Action. On or about January 7, 2026, the Underlying Action was removed to the United States District Court for the Northern District of California, where it was docketed as Case No. 4:26-cv-00183-JST. On or about April 23, 2026, the federal court remanded the Underlying Action to the Superior Court of the State of California, County of San Francisco, where it remains pending.**

**ANSWER**: Upon information and belief, Defendants admit the allegations in Paragraph 18 and refer to the dockets of the Underlying Action for their full contents and context.

**19. In addition to PepsiCo, the Underlying Complaint also names as defendants The Kraft Heinz Company, Mondelēz International, Inc., Post Holdings, Inc., The Coca-Cola Company, General Mills, Inc., Nestlé USA, Inc., Kellanova, WK Kellogg Co., Mars Incorporated, and Conagra Brands, Inc.**

**ANSWER**: Defendants admit that the Underlying Complaint names the listed entities as defendants and refer to the Underlying Complaint for its full contents and context.

**20. The Underlying Complaint alleges, among other things, that, at some unspecified point, the "extensiveness of processing" that PepsiCo and the other defendants used to make food and beverage products transforms these food and beverages into UPF, which is a term that the City defines in a variety of ways. The City alleges that unidentified products within nearly 300 of defendants' "brands" are "dangerous for human consumption" and caused City residents to develop "obesity, diabetes, heart disease, cancers, and other life-changing chronic illnesses." (Ex. A ¶¶ 8-10 (listing diseases); *id.* ¶¶ 16-40, 57 (listing "brands").) The City also asserts that these alleged risks were "hidden" from consumers because PepsiCo and the other defendants "marketed" and "promoted" their products without warning of the alleged potential long-term health effects of consuming them. (*Id.* ¶¶ 10-11). The City alleges that this conduct has led to a "nationwide epidemic" of "preventable diseases," including among the City's residents. (*Id.* ¶¶ 12-13).**

**ANSWER**: Paragraph 20 characterizes the allegations in the Underlying Complaint. Defendants deny that PepsiCo has accurately and completely characterized the allegations in the Underlying Complaint and refer to the Underlying Complaint for its full contents and context.

**21. Based on these allegations, the City asserts two causes of action—violation of the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.*, and public nuisance, Cal. Civ. Code §§ 3479-80—and seeks the monetary costs of abatement, injunctive relief, statutory civil penalties, and other relief. (*Id.* ¶¶ 234-56, Request for Relief.)**

**ANSWER**: Paragraph 21 characterizes the claims for relief in the Underlying Action. Defendants deny that PepsiCo has accurately and completely characterized the Underlying Complaint and refer to the Underlying Complaint for its full contents and context.

**22. PepsiCo and the co-defendants vigorously deny the claims alleged in the Underlying Action.**

**ANSWER**: Defendants lack information or knowledge sufficient to determine the truth of the allegations in Paragraph 22.

**B. The Insurance Policies**

**23. PepsiCo purchased primary commercial general liability Policies from ACE American (collectively, the "Primary Policies"). The Primary Policies obligate ACE American to provide a defense and indemnification to PepsiCo subject to their terms, conditions, limits, and exclusions.**

**ANSWER**: Defendants admit that PepsiCo purchased insurance policies from ACE American. Defendants deny that PepsiCo has accurately and completely characterized the ACE American policies and refer to those policies for their full contents and context.

**24. Specifically, each of the Primary Policies obligates ACE American to (among other things) pay on PepsiCo's behalf, subject to applicable limits and deductibles, "those sums that the insured becomes legally obligated to pay as damages because of [a] 'bodily injury'" that occurred "during the policy period" and was "caused by an 'occurrence.'"[1] The Primary Policies define an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." They further define "bodily injury" to mean, in relevant part, "bodily injury, mental anguish, mental injury, shock, humiliation, disability, emotional distress, trauma, fright, sickness, or disease sustained by a person, including death resulting from any of these at any time."**

**Footnote 1: Each category of Policies discussed in this section includes multiple different years of insurance Policies potentially implicated by the Underlying Action. The quoted language and policy provisions are taken from representative examples, and the exact text may vary from year to year and insurer to insurer in ways immaterial to the current dispute.**

**ANSWER**: Paragraph 24 characterizes the policies ACE American issued to PepsiCo and states legal conclusions to which no response is required. To the extent a response is required, Defendants refer to those policies for their full contents and context. Defendants otherwise deny the allegations in Paragraph 24.

**25. Importantly, the Primary Policies' protections are not limited to indemnification if PepsiCo is ever ultimately found "legally obligated to pay" covered damages. Each of the Primary Policies also specifies that, subject to its terms and conditions, ACE American has the "right and duty to defend" PepsiCo against any "suit" seeking damages that the Policy would cover. There is no exception for suits based on frivolous, unfounded, or baseless claims. An endorsement included in each of the Primary Policies further provides that ACE American will pay all costs associated with these defense duties—which the Policies call "allocated loss adjustment expense" ("ALAE")—up to the Policy's limits, and PepsiCo will then reimburse ACE American for the applicable deductible amount. The deductibles under the ALAE provisions are eroded by defense costs, as well as by any liability that PepsiCo becomes legally obligated to pay.**

**ANSWER**: Paragraph 24 characterizes the policies ACE American issued to PepsiCo and states legal conclusions to which no response is required. To the extent a response is required, Defendants refer to those policies for their full contents and context.

**26. PepsiCo also purchased certain umbrella liability Policies from either ACE American or ACE P&C (depending on the year) (collectively, the "Umbrella Policies"). Each Umbrella Policy obligates the issuing Insurer to defend PepsiCo once PepsiCo's defense costs and any liabilities exceed the liability limit of the Primary Policy that underlies it. The Umbrella Policies incorporate certain relevant terms of the Primary Policies (as well as some other underlying policies not at issue in this case). In particular, the Umbrella Policies similarly obligate the issuing Insurers to pay on PepsiCo's behalf "those sums in excess of the 'retained limit'"—i.e., the limits of the Primary Policy and any self-insured retention—"that the 'insured' becomes legally obligated to pay as damages . . . because of 'bodily injury' . . . caused by an 'occurrence'" so long as the "bodily injury" took place "during the 'policy period.'" Both "occurrence" and "bodily injury" are defined in substantially the same way as they are defined in the Primary Policies, although there is some variation in the precise language used. Each Umbrella Policy provides that the issuing Insurer has "the right and the duty to defend" PepsiCo from a covered suit—"even if groundless, false or fraudulent"—once the limits of the relevant Primary Policy have been exhausted.**

**ANSWER**: Paragraph 26 characterizes the policies ACE American and/or ACE P&C issued to PepsiCo and states legal conclusions to which no response is required. To the extent a response is required, Defendants refer to those policies for their full contents and context. Defendants otherwise deny the allegations in Paragraph 26.

**27. Lastly, PepsiCo purchased excess liability Policies from ACE P&C, Westchester and Vigilant (collectively, the "Excess Policies"). The Excess Policies apply once the applicable "underlying insurance" has been exhausted and generally incorporate "[t]he definitions, terms, conditions, limitations and exclusions of the" specific Umbrella Policy "in effect at the inception date of this policy" where not specifically excluded. Subject to the Excess Policies' terms, conditions, limits, and exclusions, the Excess Policies provide substantially coextensive coverage to the Umbrella Policies and impose varying defense duties on the issuing Insurer once the limits of the Umbrella Policies and any intervening layers of excess coverage are exhausted.**

**ANSWER**: Paragraph 27 characterizes the policies ACE P&C, Westchester, and/or Vigilant issued to PepsiCo and state legal conclusions to which no response is required. To the extent a response is required, Defendants refer to those policies for their full contents and context. Defendants otherwise deny the allegations in Paragraph 27.

**C. PepsiCo's Insurance Claims**

**28. After the Underlying Action was filed, PepsiCo gave each Insurer timely notice, requested coverage, and satisfied all other conditions to coverage.**

**ANSWER**: The allegations in Paragraph 28 contain legal conclusions to which no response is required. To the extent a response is required, Defendants admit that PepsiCo provided notice of the Underlying Action to Defendants and requested coverage. Defendants deny that all "conditions to coverage" under the Policies have been satisfied. Defendants otherwise deny the allegations in Paragraph 28.

**29. On May 1, 2026, PepsiCo received a coverage position letter (the "Coverage Letter") from the Insurers wherein they denied coverage of the Underlying Action[2] under all the Policies, including all Primary Policies, Umbrella Policies, and Excess Policies potentially implicated by the Underlying Action. Every Policy at issue employs a definition of bodily injury that specifically includes sickness, illness, and/or disease, and the Underlying Complaint expressly alleges that the damages the City seeks arise from "preventable**

**diseases" its residents purportedly suffered, including "obesity, diabetes, heart disease, cancers, and other life-changing chronic illnesses." (Ex. A ¶¶ 8-10, 12-13). Yet the exclusive basis stated in the Coverage Letter for the Insurers' denial of coverage under the Primary Policies was that the Underlying Action supposedly "does not seek to recover damages to compensate for or because of 'bodily injury' sustained by any person," and instead "seeks to recover the City's own economic damages related to the alleged public health crisis allegedly caused by Defendants." The Insurers asserted the same rationale as to the Umbrella Policies and Excess Policies, while also contending that the underlying insurance or retained limits had not yet been exhausted. The words "compensate for" do not appear in the relevant coverage provisions of any Policy. Moreover, the "economic damages" the City seeks includes the following—the costs for public hospitals, emergency medical services, community health clinics, Medicaid contributions, employee health insurance, healthcare costs in correctional facilities, and disease prevention and management programs, (Ex. A ¶ 233)—all fall squarely within the Policies' definition of "damages because of bodily injury." Again, many of the Policies state this explicitly, providing that "Damages because of 'bodily injury' include damages claimed by any… organization"—including a municipal organization like the City of San Francisco—"for care… resulting at any time from the 'bodily injury.'"**

**Footnote 2: The Coverage Letter identified the Underlying Action by its federal docket number, Case No. 3:26-cv-00183-AGT, which was later reassigned as No. 4:26-cv-00183-JST.**

**ANSWER**: The allegations in Paragraph 29 contain legal conclusions to which no response is required. To the extent a response is required, Defendants admit that, by letter dated May 1, 2026, Defendants informed PepsiCo of their respective coverage positions regarding the Underlying Action. Paragraph 29 also characterizes the Underlying Complaint, the Policies, and the May 1, 2026 letter to PepsiCo. Defendants refer to the Underlying Complaint, Policies, and the letter for their full contents and context. Defendants otherwise deny the allegations in Paragraph 29.

**30. In the Coverage Letter, the Insurers asserted that they had no obligation to defend PepsiCo, pay its defense costs, or indemnify it in connection with the Underlying Action. The Coverage Letter also purported to reserve the Insurers' rights to assert other coverage defenses that, they contend would eliminate or diminish their obligations under the Policies. None of those reserved defenses is based on a reasonable interpretation of the Policy language at issue.**

**ANSWER**: Paragraph 30 characterizes the May 1, 2026 letter to PepsiCo. Defendants refer to the letter for its full contents and context. Paragraph 30 also contains legal conclusions, to

which no response is required. To the extent a further response is required, Defendants otherwise deny the allegations in Paragraph 30.

**31. Significantly, PepsiCo's primary carrier, ACE American, has taken a different position under the same Primary Policies with respect to similar lawsuits brought by individual consumers who allege PepsiCo's purported UPFs caused them to develop Type 2 diabetes and other diseases. By letter dated June 18, 2025, months before the City filed the Underlying Action, ACE American agreed to participate in PepsiCo's defense of *Bryce Martinez v. Kraft Heinz Company, Inc., et al.*, No. 2:25-cv-00377-MRP (E.D. Pa.), subject to a reservation of rights. By letter dated May 12, 2026, eleven days after issuing the Coverage Letter, ACE American likewise agreed to participate in PepsiCo's defense of five additional individual-consumer lawsuits alleging harms from supposed UPFs, again subject to a reservation of rights.[3] The Underlying Action rests on the same alleged conduct and seeks relief for the same kinds of alleged diseases, aggregated across the City's residents.**

**Footnote 3: *Jenkins v. The Kraft Heinz Co., et al.*, No. 2:26-cv-00115 (E.D. La.); *Lawton v. The Kraft Heinz Co., et al.*, No. 1:26-cv-00044 (S.D. Miss.); *Muthusami v. The Kraft Heinz Co., et al.*, No. 6:26-cv-00113 (M.D. Fla.); *Sanford v. The Kraft Heinz Co.*, et al., No. 7:26-cv-01430 (S.D.N.Y.); *Ford v. The Kraft Heinz Co.*, No. 3:26-cv-00077 (E.D. Ark.).**

**ANSWER**: Defendants admit that ACE American issued letters dated June 18, 2025 and May 12, 2026 to PepsiCo concerning the individual-consumer lawsuits identified in Paragraph 31 and footnote 3 of the Complaint, that the letters communicated ACE American's agreement to participate in the defense of PepsiCo against the claims in those lawsuits, and that each letter was subject to a full and complete reservation of rights. Defendants deny that PepsiCo has accurately and completely characterized those letters or those lawsuits and refer to the letters and complaints in those lawsuits for their full contents and context. The allegations in Paragraph 31 also include legal conclusions to which no response is required. To the extent a further response is required, Defendants otherwise deny the allegations in Paragraph 31.

**32. The Insurers' coverage position is baseless and relies on an unreasonable interpretation of the Policies and a mischaracterization of the facts that the Underlying Complaint alleges.**

**ANSWER**: The allegations in Paragraph 32 contain legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 32.

**33. PepsiCo has paid annual premiums for decades in exchange for the Insurers' agreement that, subject to applicable deductibles, they would bear the burden of defense costs (and indemnification, if needed) for a covered suit like the City's lawsuit. The Insurers' denial has forced PepsiCo to fund its own defense in the Underlying Action, including after any applicable deductible is satisfied, and to pay any damages that it might ultimately incur. Because the Insurers refuse to honor the Policies that PepsiCo paid significant premiums to purchase, PepsiCo has incurred and continues to incur defense costs, attorneys' fees, expenses, and other damages. Those amounts continue to increase as the Underlying Action proceeds.**

**ANSWER**: The allegations in Paragraph 33 contain legal conclusions to which no response is required. To the extent a response is required, Defendants admit that PepsiCo paid premiums for the Policies issued to PepsiCo. Defendants deny that the Underlying Action is "a covered suit" and deny that Defendants have breached any obligation to PepsiCo in connection with the Underlying Action. Defendants lack information or knowledge sufficient to determine the truth of the allegations in Paragraph 33 concerning the defense costs, attorneys' fees, expenses, or other amounts PepsiCo has incurred. Defendants otherwise deny the allegations in Paragraph 33.

**34. The Insurers' denial cannot be squared with the plain language of their Policies and New York law. Accordingly, PepsiCo seeks declaratory relief confirming the Insurers' coverage and defense obligations, as well as damages arising from their breaches of the Policies.**

**ANSWER**: The allegations in Paragraph 34 contain legal conclusions to which no response is required. To the extent a response is required, Defendants deny PepsiCo's characterizations of the Policies and New York law. Defendants also deny that PepsiCo is entitled to any relief against Defendants. Defendants otherwise deny the allegations in Paragraph 34.

## AS FOR A FIRST CAUSE OF ACTION FOR A DECLARATORY JUDGMENT

**35. PepsiCo repeats and realleges each of the foregoing paragraphs as if fully set forth herein.**

**ANSWER**: Defendants incorporate their foregoing responses herein by reference.

**36. An actual justiciable controversy exists between PepsiCo and the Insurers concerning the rights and obligations of the parties under the Policies. Specifically, PepsiCo**

**is presently entitled to defense and coverage for the Underlying Action under one or more of the insurance Policies detailed herein, and may be entitled to further coverage if and when its defense costs and/or any damages it incurs exceed certain amounts. The Insurers each expressly deny PepsiCo's entitlement to defense and coverage.**

**ANSWER**: The allegations in Paragraph 36 contain legal conclusions to which no response is required. To the extent a response is required, Defendants deny that an actual and justiciable controversy exists at least as between PepsiCo and Vigilant. Defendants also deny that PepsiCo is entitled to any relief against Defendants.

**37. This dispute is properly addressed in a declaratory judgment action because a declaratory judgment will serve the useful purpose of clarifying and settling the legal relations at issue.**

**ANSWER**: The allegations in Paragraph 37 contain legal conclusions to which no response is required. Defendants deny that PepsiCo is entitled to any relief against Defendants.

**38. A declaratory judgment is also proper because it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to this proceeding.**

**ANSWER**: The allegations in Paragraph 38 contain legal conclusions to which no response is required. Defendants deny that PepsiCo is entitled to any relief against Defendants.

**39. Declaratory relief is thus necessary to determine the parties' rights and obligations under the Policies. Pursuant to CPLR § 3001, PepsiCo accordingly seeks a judicial declaration of the parties' respective rights and obligations under the Policies, including confirmation that PepsiCo is entitled to coverage for the Underlying Action and the amount for which PepsiCo is entitled to reimbursement.**

**ANSWER**: Paragraph 39 contains legal conclusions to which no response is required. To the extent a response is required, Defendants deny that PepsiCo is entitled to any relief against Defendants.

**40. Specifically, PepsiCo seeks a judicial declaration of the parties' respective rights and obligations under the Policies, including a declaration that: (i) ACE American has a present duty to defend PepsiCo in the Underlying Action under the Primary Policies, subject to any applicable deductible; (ii) the Umbrella and Excess Insurers must fulfill their respective defense obligations to PepsiCo in connection with the Underlying Action once the applicable attachment points are satisfied; (iii) the Insurers must indemnify PepsiCo should any covered liability result from the Underlying Action, subject to the Policies' respective**

**terms, deductibles, and attachment points, with any determination of that issue to be made, or held in abeyance, as the Court deems appropriate; and (iv) ACE American has breached the Primary Policies by refusing to defend PepsiCo in the Underlying Action, and the other Insurers have breached their respective Policies by denying coverage and repudiating their obligations to PepsiCo, which arise upon satisfaction of the applicable attachment points.**

**ANSWER**: Paragraph 40 states PepsiCo's requested relief, to which no response is required. To the extent a response is required, Defendants deny that PepsiCo is entitled to any of the declarations described in Paragraph 40, deny that Defendants have breached any obligation owed to PepsiCo in connection with the Underlying Action, and deny that PepsiCo is entitled to any relief against Defendants.

**AS FOR A SECOND CAUSE OF ACTION**
**FOR BREACH OF CONTRACT**

**41. PepsiCo repeats and realleges each of the foregoing paragraphs as if fully set forth herein.**

**ANSWER**: Defendants incorporate their foregoing responses herein by reference.

**42. Each of the Policies is a valid and enforceable contract between PepsiCo and the issuing Insurer.**

**ANSWER**: The allegations in Paragraph 42 contain legal conclusions to which no response is required. To the extent a response is required, Defendants admit, based on currently available information, that the Policies issued by Defendants are valid and enforceable contracts and refer to the Policies for their full contents and context. To the extent the allegations in Paragraph 42 attempt to impose any liability on Defendants, the allegations are denied.

**43. PepsiCo paid premiums and performed all of its obligations under the Policies, including by providing notice of the Underlying Action.**

**ANSWER**: The allegations in Paragraph 43 contain legal conclusions to which no response is required. To the extent a response is required, Defendants admit that PepsiCo paid premiums for the Policies Defendants issued to PepsiCo. Defendants deny that PepsiCo has performed all

of its obligations under the Policies. To the extent the allegations in Paragraph 43 attempt to impose any liability on Defendants, the allegations are denied.

**44. Under the Policies, the Insurers agreed to fulfill defense and—where appropriate—indemnity obligations in connection with certain claims or suits against PepsiCo.**

**ANSWER**: The allegations in Paragraph 44 contain legal conclusions to which no response is required. To the extent a response is required, Defendants deny that PepsiCo has accurately and completely characterized the Policies and refer to the Policies for their full contents and context. To the extent the allegations in Paragraph 44 attempt to impose any liability on Defendants, the allegations are denied.

**45. The Underlying Action seeks alleged damages arising from claims that products sold by PepsiCo caused or contributed to serious illnesses or diseases covered by the Policies. It therefore triggered ACE American's contractual defense obligations under the Primary Policies, and it will trigger the Umbrella and Excess Insurers' contractual defense duties under their respective Policies if and when the applicable attachment points are satisfied.**

**ANSWER**: The allegations in Paragraph 45 contain legal conclusions to which no response is required. To the extent a response is required, Defendants deny that PepsiCo has accurately and completely characterized the Underlying Complaint or the Policies and refer to the Underlying Complaint and the Policies for their full contents and context. Defendants deny that Defendants have breached any obligation to PepsiCo in connection with the Underlying Action, and Defendants deny that the Underlying Action will "trigger" defense duties under certain policies in the future. Defendants otherwise deny the allegations in Paragraph 45.

**46. ACE American breached the Primary Policies by, among other things: denying coverage for the Underlying Action, refusing to defend PepsiCo, refusing to pay ongoing defense costs, and otherwise repudiating and failing to perform its obligations under the Primary Policies. Each of the other Insurers breached its respective Policies by denying coverage for the Underlying Action and repudiating its obligations to defend PepsiCo upon satisfaction of the applicable attachment points.**

**ANSWER**: The allegations in Paragraph 46 contain legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 46.

**47. As a direct and proximate result of these material breaches of their Policies by the Insurers, PepsiCo has been and will continue to be deprived of the benefit of the bargain of the insurance coverage it purchased. PepsiCo bought insurance to protect itself from lawsuits like the Underlying Action, and Insurers accepted the premiums for this purpose, but they now refuse to provide the promised protection when it is needed.**

**ANSWER**: The allegations in Paragraph 47 contain legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 47.

**48. As a consequence of Insurers' breach of their obligations under the Policies, PepsiCo has suffered and will continue to suffer monetary damages, including, but not limited to, those damages resulting from the Insurers' improper withholding of insurance benefits that are due under the Policies and attorneys' fees in this action.**

**ANSWER**: The allegations in Paragraph 48 contain legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 48.

**PRAYER FOR RELIEF**

**WHEREFORE, Plaintiff PepsiCo respectfully requests that this Court enter judgment in its favor and against the Insurers and grant the following relief:**

**A. A declaration of the parties' respective rights and obligations under the Policies, including a declaration that: (i) ACE American has a present duty to defend PepsiCo in the Underlying Action under the Primary Policies, subject to any applicable deductible; (ii) the Umbrella and Excess Insurers must fulfill their respective defense obligations to PepsiCo in connection with the Underlying Action once the applicable attachment points are satisfied; (iii) the Insurers must indemnify PepsiCo should any covered liability result from the Underlying Action, subject to the Policies' respective terms, deductibles, and attachment points, with any determination of that issue to be made, or held in abeyance, as the Court deems appropriate; and (iv) ACE American has breached the Primary Policies by refusing to defend PepsiCo in the Underlying Action, and the other Insurers have breached their respective Policies by denying coverage and repudiating their obligations to PepsiCo, which arise upon satisfaction of the applicable attachment points;**

**B. An award of monetary damages for the amounts that PepsiCo has had to pay (and will pay) to defend the Underlying Action, subject to any applicable deductible;**

**C. An award of PepsiCo's costs and expenses incurred in this action, including reasonable attorneys' fees, to the extent permitted by law, together with prejudgment and post-judgment interest at the applicable statutory rate; and**

**D. Such other and further relief as the Court deems just and proper.**

**RESPONSE TO PRAYER FOR RELIEF**: Paragraphs enumerated as (A) through (D) under the Prayer for Relief contain Plaintiff's prayer for relief, to which no response is required. To the extent a response is required, Defendants deny that Plaintiff is entitled to any relief.

## DEFENSES

Defendants set forth the following defenses. Each defense is asserted by all Defendants as to all claims against Defendants. By setting forth these defenses, Defendants do not assume the burden of proving any fact, issue, or element of a cause of action where such burden properly belongs to PepsiCo. Nothing stated herein is intended or shall be construed as an admission that any particular issue or subject matter is relevant to PepsiCo's allegations. Defendants reserve the right to assert other defenses as the case proceeds.

### FIRST DEFENSE
### (Failure to State a Claim)

1. The Complaint fails to state a claim upon which relief can be granted.

### SECOND DEFENSE
### (No Declaratory Relief)

2. PepsiCo's cause of action for declaratory relief fails to state sufficient facts upon which relief can be granted against Defendants.

### THIRD DEFENSE
### (No Attorneys' Fees)

3. PepsiCo fails to state a claim for which attorneys' fees incurred in this action may be awarded against Defendants.

**<u>FOURTH DEFENSE</u>**
**(No Coverage Under Defendants' Policies)**

4. PepsiCo is not entitled to insurance coverage for the Underlying Action, in whole or in part, to the extent that such coverage is not available pursuant to the terms, provisions, conditions, limitations, and exclusions of the Policies issued by Defendants.

**<u>FIFTH DEFENSE</u>**
**(No Coverage Under Underlying Policies)**

5. PepsiCo is not entitled to insurance coverage for the Underlying Action, in whole or in part, to the extent that such coverage is not available pursuant to the terms, provisions, conditions, limitations, and exclusions of certain insurance policies underlying Defendants' policies.

**<u>SIXTH DEFENSE</u>**
**(Lack of Exhaustion)**

6. PepsiCo is not entitled to insurance coverage for the Underlying Action, in whole or in part, to the extent that all underlying insurance, including all retentions, deductibles, and limits in such underlying insurance, has not been properly exhausted by the payment of covered claims.

**<u>SEVENTH DEFENSE</u>**
**(No Damages Because of "Bodily Injury")**

7. PepsiCo is not entitled to insurance coverage for the Underlying Action, in whole or in part, to the extent that the Underlying Action does not seek damages for or because of "bodily injury."

**<u>EIGHTH DEFENSE</u>**
**(No "Damages")**

8. PepsiCo is not entitled to insurance coverage for the Underlying Action, in whole or in part, to the extent that the Underlying Action does not seek to recover for damages as that term is used in the Policies.

**<u>NINTH DEFENSE</u>**
**(No Bodily Injury During Policy Period)**

9. PepsiCo is not entitled to insurance coverage for the Underlying Action, in whole or in part, to the extent that any alleged "bodily injury" did not occur during the particular policy period of the respective Policies issued by Defendants.

**<u>TENTH DEFENSE</u>**
**(No "Occurrence")**

10. PepsiCo is not entitled to insurance coverage for the Underlying Action, in whole or in part, to the extent that any alleged damages were not caused by an "occurrence" or "accident."

**<u>ELEVENTH DEFENSE</u>**
**(No Coverage for Fines, Penalties, Restitution, Abatement, Injunctive, or Other Equitable Relief)**

11. PepsiCo is not entitled to insurance coverage for the Underlying Action, in whole or in part, for fines, statutory civil penalties, restitution, disgorgement, punitive or exemplary damages, abatement costs, injunctive or other equitable relief, and/or the costs of complying with any injunctive or other equitable relief, whether temporary or permanent.

**<u>TWELFTH DEFENSE</u>**
**(Violation of Law and/or Public Policy)**

12. To the extent PepsiCo's acts or failure to act were in violation (or non-compliance with) law and/or public policy, or government rule, regulation or law, PepsiCo's claims are or may be barred.

**THIRTEENTH DEFENSE**
**(Lack of Prior Consent, Voluntary Payments Provision)**

13. PepsiCo is not entitled to reimbursement for any attorneys' fees incurred without satisfaction of the conditions laid out in the Policies' "Duties in the Event of Occurrence, Offense, Claim Or Suit" provisions or similar provisions.

**FOURTEENTH DEFENSE**
**(Failure to Mitigate)**

14. To the extent that PepsiCo has failed to mitigate, minimize, or avoid any damages it allegedly sustained, any recovery against Defendants must be reduced accordingly.

**FIFTEENTH DEFENSE**
**(Preventative Costs)**

15. The claims against Defendants may be barred, in whole or in part, to the extent the Underlying Action seeks indemnity for costs incurred or to be incurred to prevent or mitigate loss, injury, damage or liability.

**SIXTEENTH DEFENSE**
**(Prior Knowledge and/or Injury Deemed Known)**

16. PepsiCo is not entitled to insurance coverage for the Underlying Action, in whole or in part, to the extent that PepsiCo or certain of its officers, directors, or other employees knew (or are deemed to have known), prior the beginning of the applicable policy periods, of the bodily injury, in whole or in part, or any damages or claims alleged or involved in the Underlying Action.

**SEVENTEENTH DEFENSE**
**(Expected or Intended Injury Exclusion)**

17. PepsiCo is not entitled to insurance coverage for the Underlying Action, in whole or in part, to the extent that any alleged claims identified in the Underlying Action are barred by exclusions for expected or intended injury.

**EIGHTEENTH DEFENSE**
**(Failure to Perform)**

18. PepsiCo is not entitled to insurance coverage for the Underlying Action, in whole or in part, to the extent that PepsiCo failed to perform its obligations under the terms and conditions of Defendants' Policies.

**NINETEENTH DEFENSE**
**(Impairment of Rights)**

19. PepsiCo is not entitled to insurance coverage for the Underlying Action, in whole or in part, to the extent that PepsiCo has impaired or prejudiced Defendants' rights to subrogation, indemnity, contribution, setoffs, and/or settlement.

**TWENTIETH DEFENSE**
**(Other Insurance)**

20. PepsiCo is not entitled to insurance coverage for the Underlying Action, in whole or in part, to the extent that other valid and collectible insurance is available to cover any loss otherwise covered by Defendants' Policies

**TWENTY-FIRST DEFENSE**
**(Unreasonable Payments)**

21. PepsiCo is not entitled to insurance coverage for the Underlying Action, in whole or in part, to the extent that any amounts paid or to be paid as defense costs or settlement amounts were or are unreasonable.

**TWENTY-SECOND DEFENSE**
**(No Pre-Notice Defense Costs)**

22. PepsiCo is not entitled to insurance coverage for the Underlying Action, in whole or in part, to the extent that PepsiCo incurred costs before tendering the defense or providing notice of any such claim to Defendants.

**TWENTY-THIRD DEFENSE**
**(Statute of Limitations and/or Laches)**

23. PepsiCo's claims are barred, in whole or in part, to the extent that any statute of limitations and/or the doctrine of laches apply.

**TWENTY-FOURTH DEFENSE**
**(Contribution)**

24. To the extent that the sums allegedly incurred by PepsiCo are covered by Defendants' Policies, other insurers may be obligated to pay the sums, reimburse Defendants for their payments, or contribute to Defendants' payments.

**TWENTY-FIFTH DEFENSE**
**(Allocation)**

25. In the event that Defendants are found to be in any way liable in this matter, any damages must be appropriately allocated.

**TWENTY-SIXTH DEFENSE**
**(Reservation of Additional Defenses)**

31. Defendants hereby invoke and assert all defenses which may prove applicable herein, so as not to waive them, including, but not necessarily limited to, waiver, estoppel, release, accord and satisfaction, statute of limitations, laches, res judicata, and collateral estoppel, and further reserve the right to raise such additional defenses as may appear appropriate following further discovery and factual development in this case, including the defenses reserved in the Coverage Letter.

**WHEREFORE**, Defendants respectfully request that PepsiCo take nothing by way of its Complaint; that the Court dismiss the Complaint with prejudice; that the Court issue a declaration that Defendants owe no defense or indemnity obligation to PepsiCo in connection with the

Underlying Action under any insurance policy issued by them; and that the Court grant Defendants such other and further relief as the Court may deem just and proper.

Dated: November 17, 2026
New York, New York

**HOLWELL SHUSTER & GOLDBERG LLP**

By: _/s/ Blair E. Kaminsky_
Blair E. Kaminsky
Daniel M. Horowitz
425 Lexington Ave, 14th Floor
New York, NY 10017
bkaminsky@hsgllp.com
dhorowitz@hsgllp.com
Telephone: 646-837-5151

*Attorneys for Defendants ACE American Insurance Company, ACE Property and Casualty Insurance Company, Westchester Surplus Lines Insurance Company, and Vigilant Insurance Company*